UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA A. BAKER, ) | Case No. EDCV 08-0212-JTL |
|         Plaintiff, ) | MEMORANDUM OPINION AND ORDER |
|    v. ) | |
| MICHAEL J. ASTRUE, ) Commissioner of Social Security, ) | |
|         Defendant. ) | |

**PROCEEDINGS**

On February 25, 2008, Barbara A. Baker ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of her application for Supplemental Security Income benefits. On March 18, 2008, Michael J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. On March 19, 2008, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on September 26, 2008, defendant filed an Answer to the Complaint. On February 20, 2009, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On May 20, 1991, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ["AR"] at 28-44). Plaintiff claimed that, beginning on September 1, 1990, "heart problems" prevented her from working. (AR at 41). On July 19, 1991, the Commissioner awarded plaintiff benefits based on her congestive heart failure and cardiomyopathy. (AR at 45-47).

On July 14, 1997, the Social Security Administration ("SSA") informed plaintiff that her benefits would cease because it determined that plaintiff's heart condition had improved and that she was now able to work. (AR at 67-70). Plaintiff requested reconsideration of the cessation of her benefits. (AR at 71-73). The SSA denied plaintiff's request. (AR at 75-76). On May 26, 1999, the Administrative Law Judge ("ALJ") issued a decision denying benefits. (AR at 274-78). In his decision, the ALJ noted that plaintiff had resisted all attempts to attend the scheduled hearing and delayed the proceedings for nearly a year. (AR at 275). The ALJ further concluded that the medical record established medical improvement and that plaintiff retained the residual functional capacity to perform a full range of light work. (AR at 277). Thus, the ALJ determined that plaintiff's disability ceased as of February 1, 1998 and her entitlement to Supplemental Security Income benefits ceased as of April of 1998. (Id.). On March 28, 2002, the Appeals Council remanded the case to the ALJ because it was unable to locate or redevelop the evidence upon which the ALJ based his decision. (AR at 507-09). The Appeals Council instructed the ALJ to provide plaintiff with a hearing and an opportunity to submit additional evidence. (AR at 508).

On July 18, 2002, the ALJ conducted a hearing in Orange, California. (AR at 532-57). Plaintiff appeared at the hearing without representation and testified. (AR at 537-46). Jocelyn Bailey, M.D., a medical expert, also appeared and testified. (AR at 546-55). On or about December 11, 2002, the ALJ issued his decision denying benefits. (AR at 19-27). In his decision, the ALJ concluded that plaintiff suffered from a severe impairment of congestive heart failure. (AR at 26). According to the ALJ, however, this impairment did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404,

Subpart P, Appendix 1.  (AR at 26).  The ALJ also found plaintiff's allegations regarding her limitations not credible.  (Id.).  The ALJ further determined that plaintiff possessed the residual functional capacity to perform a full range of light work.  (Id.).  Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act and ended plaintiff's eligibility for benefits on April 30, 1998.  (AR at 25).  On February 20, 2003, plaintiff filed a request with the Appeals Council for review of the ALJ's decision.  (AR at 11).  On September 14, 2005, the Appeals Council affirmed the ALJ's decision.  (AR at 5-7).

Plaintiff appealed the matter to the district court.  On November 30, 2006, the district court remanded the case and instructed the ALJ to develop the record with respect to the issue of plaintiff's medical improvement by obtaining the records of plaintiff's treating physician, Bijan Badihian, D.O.  (AR at 588-98).

On August 2, 2007, the ALJ conducted a hearing in Orange, California.  (See AR at 819-47).  Plaintiff appeared at the hearing with counsel.  (See AR at 821).  Dr. Bailey, the medical expert, testified at the hearing.  (AR at 822-46).  On November 30, 2007, the ALJ issued his decision denying benefits to plaintiff.  (AR at 561-70).  The ALJ noted that in connection with the district court's remand order, the ALJ obtained the treatment records of Dr. Badihian covering the period July 2002 through September 2004, as well as the treatment records of Imad El Asmar, M.D., for the period from December 2005 through April 2007, and records from Rana A. Bahl, M.D.  (AR at 564).  The ALJ determined that as of February 1, 1998, plaintiff had the following medical determinable impairments: history of cardiomyopathy and congestive heart failure, hypertension, hyperlipidemia, obesity, mild low back pain, asthma, non-severe bereavement, and non-severe dysthymia.  (AR at 568-69).  The ALJ found that plaintiff's conditions did not meet or equal any of the impairments contained in the Listing of Impairments (see 20 C.F.R. Part 404, Subpart P, Appendix 1).  The ALJ concluded that medical improvement occurred as of February 1, 1998 because, at that time, plaintiff's impairments no longer met or equaled a Listing.  (AR at 569).  The ALJ determined that as of February 1, 1998, plaintiff was unable to perform her past relevant work, but retained the residual functional capacity to perform a limited range of light work and a significant number of jobs in the national

economy.(AR at 569). Specifically, the ALJ determined that plaintiff retained the residual functional capacity to sit for eight hours during an eight-hour workday; stand and/or walk, with normal breaks, for six hours in an eight-hour workday; lift and/or carry 25 pounds occasionally and 10 pounds frequently; bend frequently; squat and climb stairs occasionally. Plaintiff is also precluded from crawling or work involving temperature extremes or concentrated exposure to fumes, odors, dusts, and gases. (AR at 569). Accordingly, the ALJ concluded that plaintiff's disability ended on February 1, 1998, and plaintiff had not become disabled again since that date. (Id.).

Thereafter, plaintiff appealed to the United States District Court.

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1. The ALJ failed to provide sufficient reasons for rejecting the opinions of Bijan Badihian, D.O. and Imad El Asmar, M.D., plaintiff's treating physicians, regarding plaintiff's physical work capacity.

2. The ALJ improperly rejected the credibility of plaintiff's subjective complaints based on plaintiff's lack of recent medical treatment.

3. The ALJ erred in giving weight to the opinion rendered by Joselyn E. Bailey, M.D., the medical expert who testified at two hearings, and in his failure to develop the record to obtain the medical records documenting plaintiff's most recent treatment.

4. Because the ALJ failed to consult with a vocational expert, the ALJ's determination that plaintiff is capable of substantial gainful work is not supported by substantial evidence.

5. The ALJ failed to afford plaintiff an opportunity to testify about her activities of daily living.

///
///
///

# STANDARD OF REVIEW

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

# DISCUSSION

**A.    The Sequential Evaluation**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 141 (1987). Second, the ALJ must determine whether the claimant has a severe impairment. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively

disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantially gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish his or her entitlement to disability insurance benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

**B.      Whether the ALJ Improperly Failed to Obtain Testimony From a Vocational Expert**

Plaintiff argues that the ALJ's failure to obtain testimony from a vocational expert constitutes reversible error. (Joint Stipulation at 21-23). In particular, plaintiff alleges that the Medical-Vocational Guidelines ("grids") did not capture all of plaintiff's non-exertional limitations and, thus, the ALJ improperly relied on the grids to conclude plaintiff was "not disabled." (Joint Stipulation at 23). Defendant argues that the ALJ determined that plaintiff's non-exertional limitations were not significant and properly concluded that a finding of "not disabled" was directed by Rules 202.17 and 202.10 of the grids. Defendant argues that because plaintiff did not suffer from significant non-exertional impairments that were not contemplated by the grids, the testimony of a vocational expert was not required. (Joint Stipulation at 24).

Once a claimant has established that she cannot return to her past relevant work, as the case here, the burden shifts to the Commissioner to show that there is other substantial work which the claimant can perform. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). The Commissioner can meet this burden in two ways: (1) by calling upon a vocational expert to testify as to what jobs the claimant can still perform given her residual functional capacity and the availability of such jobs in the national economy and (2) by relying upon the

Medical-Vocational Guidelines ("grids") in Appendix 2, Subpart P, 20 C.F.R. Part 404.[1]  20 C.F.R. §§ 404.1520(g), 404.1562; Lounsbury, 468 F.3d at 1114; Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

The grids are used to determine whether a claimant can transition to substantial gainful activity with respect to substantially uniform levels of impairment. Moore, 216 F.3d at 869. The grids are predicated on a claimant suffering from an impairment which manifests itself by limitations in meeting the strength requirements of a job, or the exertional limitations; therefore, the grids may not be fully applicable where the nature of a claimant's impairment does not result in such limitations and, instead, result in non-exertional limitations. Lounsbury, 468 F.3d at 1115. Non-exertional impairments - including environmental, postural and manipulative limitations may, if sufficiently severe, limit a claimant's functional capacity in ways not contemplated by the grids. Id. (internal citations and quotations omitted).

Where a claimant suffers from both exertional and non-exertional limitations, the ALJ should first consult the grids. Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). If the claimant is not capable of performing the entire range of work included in one of the categories on the grids, further consideration must be given to types of work that may be precluded. Tackett, 180 F.3d at 1101. "Because the grids are not designed to establish automatically the

---

[1] The grids are a short-hand method for determining the availability and number of suitable jobs for claimants with substantially uniform levels of impairment:

> The grids categorize jobs by their physical-exertional requirements and consist of three separate tables - one for each category: "[m]aximum sustained work capacity limited to sedentary work," "[m]aximum sustained work capacity limited to light work," and "[m]aximum sustained work capacity limited to medium work." Each grid presents various combinations of factors relevant to a claimant's ability to find work. The factors in the grids are the claimant's age, education, and work experience. For each combination of these factors, e.g., fifty years old, limited education, and unskilled work experience, the grids direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements.

Tackett, 180 F.3d at 1101 (internal citations omitted). The Secretary of Health and Human Services adopted the grids to improve the efficiency of the application process and to promote uniform decision-making. Heckler v. Campbell, 462 U.S. 458, 461 (1983).

existence of jobs for persons with both severe exertional and non-exertional impairments, they may not be used to direct a conclusion of nondisability" for such a claimant. Lounsburry, 468 F.3d at 1116 (emphasis in original) (citing Tackett, 180 F.3d at 1102). In other words, if a claimant with both exertional and non-exertional limitations is "not disabled" under the grids, the non-exertional limitations must be examined separately.[2] Id. "The grids should be applied only where a claimant's functional limitations fall into a standardized pattern 'accurately and completely' described by the grids." Tackett, 180 F.3d at 1103. When the grids do not adequately take into account a claimant's abilities and limitations, the grids are to be used only as a framework, and a vocational expert must be consulted. Moore, 216 F.3d at 869-70; see Tackett, 180 F.3d at 1105; contrast Hoopai, 499 F.3d at 1075-77 (holding that satisfaction of the "threshold requirement that a claimant prove her limitations are severe is not dispositive of the . . . determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert").

Here, the ALJ determined that plaintiff has the residual functional capacity to sit for eight hours during an eight-hour workday; stand and/or walk, with normal breaks, for six hours in an eight-hour workday; lift and/or carry 25 pounds occasionally and 10 pounds frequently; is limited to bending frequently, squatting and climbing stairs occasionally, and precluded from crawling or work involving temperature extremes or concentrated exposure to fumes, odors, dusts, and gases. (AR at 569). In making this determination, the ALJ relied on the testimony of Dr. Bailey, the medical expert who testified at both the July 18, 2002 and August 2, 2007 hearings (see AR at 548-49, 830-37)[3], and Gabriel Fabella, M.D., a consultative examiner whose opinion the ALJ

---

[2] This bar on the exclusive reliance on the grids is limited by its requirement that the non-exertional impairments invoked must be significant enough to limit further the range of work permitted by exertional limitations before precluding application of the grids. Lounsburry, 468 F.3d at 1115 n.2 (internal citations omitted); Hoopai v. Astrue, 499 F.3d 1071, 1075-77 (9th Cir. 2007).

[3] At the August 2, 2007 hearing, Dr. Bailey opined that plaintiff should be limited to occupations that involve no crawling because, as a result of plaintiff's Long QT syndrome, it could trigger "something wrong with her heart." (AR at 830-31). With regard to plaintiff's environmental limitations, Dr. Bailey testified that plaintiff should avoid fumes, odors, dust, or gases, in other words, no concentrated exposure to fumes, odors, dust, or gases. (AR at 831-32).

determined was based on independent clinical findings.  (AR at 566; see AR at 498).  The ALJ then determined that plaintiff's residual functional capacity precluded her from performing her past relevant work as an environmental service worker, which requires medium exertional work activity.  (AR at 567).  Thereafter, the ALJ moved to step five of the sequential evaluation to determine whether other jobs exist in significant numbers in the national economy that plaintiff can perform, consistent with her residual functional capacity, age, education and work experience.  (Id.).

At step five of the sequential evaluation, the ALJ improperly used the grids to direct a finding of non-disability.  See Lounsburry, 468 F.3d at 1116.  The ALJ determined that although plaintiff had both exertional and non-exertional limitations, a finding of "not disabled" was directed by Medical Vocational Rules 202.17 and 202.10.[4]  (AR at 568).  With regard to plaintiff's non-exertional limitations, the ALJ determined that while plaintiff "cannot perform the full range of light work, the additional limitations have little or no effect on the occupational base of unskilled light work."  (Id.).  The ALJ relied on Social Security Ruling ("SSR")[5] 83-14 and SSR 85-15 to conclude that plaintiff's non-exertional limitations had "little or no effect on the occupational base of unskilled light work."  (Id.).  The ALJ cited to SSR 85-15 in support of his conclusion that "[k]neeling and crawling limitations do not have a significant impact on the broad world of work" and that "[r]estrictions against temperature extremes, and excessive amounts of fumes, dust, etc., are insignificant at all exertional levels."  (Id.).  SSR 85-15 was promulgated to clarify how the grids should be used as a framework for evaluating solely non-exertional impairments, not a combination of non-exertional and exertional impairments, as is the case

---

[4] The ALJ determined that beginning on February 1, 1998, a finding of "not disabled" was directed by Medical Vocational Rule 202.17.  (AR at 568).  The ALJ also determined that upon reaching age 50 ("closely approaching advanced age") on November 16, 2005, Medical Vocational-Rule 202.10 directed a finding of "not disabled" for the period after November 16, 2005.  (Id.).

[5] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies.  Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

here.  See SSR 85-15, 1985 WL 56857, at *2.  Thus, the ALJ improperly relied on SSR 85-15 to conclude that plaintiff's crawling and environmental limitations were insignificant.

SSR 83-14 addresses the use of the medical-vocational rules for evaluating a combination of exertional and non-exertional impairments.  SSR 83-14, 1983 WL 31254, at *1.  Here, the ALJ properly relied on SSR 83-14 in support of his conclusion that plaintiff's assessed limitations in bending and squatting had little to no effect on the occupational base of unskilled light work: "bending and squatting limitations do not impact the light occupation base as stooping/bending are only required occasionally in light work, and crouching/squatting is not required."[6]  (AR at 568).

The ALJ failed to properly address the effect of plaintiff's assessed stair-climbing, crawling, and environmental limitations on the occupational base of unskilled light work.[7]  The ALJ erroneously relied on SSR 85-15 in concluding that claimant's non-exertional limitations did not have a significant effect on the occupational base of unskilled light work.  The ALJ's conclusory statements and references to the Rulings are insufficient to constitute substantial evidence in support of his use of the grids to direct a finding of "not disabled."  See Richardson, 402 U.S. at 401.  Thus, the ALJ failed to properly determine if plaintiff's non-exertional limitations significantly limit the range of work permitted by her exertional limitations before applying the grids.  See Desrosiers v. Sec'y, 846 F.2d 573, 577 (9th Cir. 1988) (Pregerson, J., concurring); Hoopai, 499 F.3d at 1075.  Based on this record, the Court cannot determine

---

[6] In SSR 83-14, the Commissioner notes that there are non-exertional limitations or restrictions which have very little or no effect on the unskilled light occupational base, and listed examples of such non-exertional limitations including the inability to crawl on hands and knees, and environmental restrictions "such as the need to avoid exposure to feathers." 1983 WL 31254, at *4-5. The Commissioner also notes that the ability to meet the lifting requirements of light work, i.e., to frequently lift or carry objects weighing up to ten pounds, "implies that the worker is able to do occasional bending of the stooping type." SSR 83-14, 1983 WL 31254, at *4.

[7] While SSR 83-14 does reference the limited impact of environmental limitations on the unskilled light occupational base, see supra n.7, this reference is insufficient for the Court to conclude that plaintiff's assessed environmental limitation that precludes work involving temperature extremes or concentrated exposure to fumes, odors, dusts, and gases is not significant enough to limit further the range of work permitted by plaintiff's exertional limitations.

whether the ALJ's failure to address the effect of plaintiff's assessed stair-climbing, crawling, and environmental limitations on the occupational base of unskilled light work was harmless.

**C.     Remand is Required to Remedy Defects in the ALJ's Decision**

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

Here, the Court finds remand appropriate. The ALJ failed to make proper findings in support of his determination at step five of the sequential evaluation. On remand, the ALJ must clearly indicate whether plaintiff's non-exertional impairments are so significant as to limit further the range of work permitted by plaintiff's exertional limitations. If the non-exertional impairments are significant, then the use of the grids is precluded and the ALJ must consult with a vocational expert to determine whether plaintiff is capable of substantial gainful activity. In SSR 83-14, the Commissioner explained that the use of vocational resources are helpful even in "obvious" cases where a particular non-exertional limitation may have very little effect on the range of work that a claimant can perform and results in a claimant that "comes very close to meeting a table rule which directs a conclusion of 'Not disabled.'" SSR 83-14, 1983 WL 31254 at *3-4. If the grids do not adequately take into account plaintiff's abilities and limitations, the grids can be used only as a framework, and a vocational expert must be consulted. See Moore, 216 F.3d at 869-70; Tackett, 180 F.3d at 1105.[8]

///

---

[8] In the Joint Stipulation, plaintiff also contends that the ALJ erred by failing to provide sufficient reasons for rejecting the opinions of plaintiff's treating physicians, rejecting the credibility of plaintiff's subjective complaints, giving controlling weight to the opinion rendered by Joselyn E. Bailey, M.D., and by failing to afford plaintiff an opportunity to testify about her activities of daily living. As explained above, however, the ALJ's error at step five of the sequential evaluation constitutes sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments again. In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 31, 2009

/s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE